IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:16CR329 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | |
| YAZAN B. AL-MADANI, | ) | UNITED STATES' BRIEF OPPOSING |
| | ) | DEFENDANT AL-MADANI'S MOTION |
| Defendant. | ) | FOR RULE 17(C) POST-TRIAL |
| | ) | SUBPOENA |
| | ) | |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Om M. Kakani, Assistant United States Attorney, and hereby files the Brief in Opposition to Defendant Al-Madani's Motion for a Rule 17(c) Post-Trial Subpoena. Because Defendant Al-Madani only presumes that the information he requests is relevant, without actually meeting his burden, certain material requested is wholly cumulative of evidence produced at trial, and Defendant's remaining requests are mere attempts to relitigate the trial verdict, his motion should be denied.

Defendant Al-Madani now presupposes that he is entitled to issuance of his requested subpoena for:

1. An employment contract for Dr. Loiy Al-Shami, who was not a defendant in this case, did not offer or provide bribes and kickbacks to others like Defendant Al-Madani, worked full-time at a county jail, and fully disclosed his employment status to the hospital *after* his residency was completed, which was also *after* Hills left the

hospital.  This request further requests those documents starting in 2015 – AFTER the time alleged in the Hobbs Act Conspiracy.

2. "Collection vs. Compensation Analysis" reports for 2015-2018, again, encompassing a time period *after* co-defendant Hills left the hospital and after the timeframe alleged for the conspiracy.

3. Emails concerning Dr. James Kozik and his work status.  Dr. Kozik, like Dr. Al-Shami, was neither convicted nor charged nor otherwise involved in this matter.

4. Employment contracts for all MetroHealth attending dentists from 2015-2019, *after* Hills left MetroHealth and his power and influence were no longer available to Defendant Al-Madani.

The Court should deny his motion as he has made absolutely no effort to meet the *Nixon* factors.   Instead, Defendant presents a "bare-bones" and generic statement expressing his need for these wholly irrelevant materials.  Additionally, certain materials are either already in his possession or are cumulative of information provided at trial.  Defendant further fails to demonstrate that he has exercised due diligence in attempting to obtain them by other means. Finally, the government submits that Defendant Al-Madani is again attempting to litigate a Rule 29 argument concerning his Hobbs Act conviction that he specifically waived, and as such, his request should be denied.

## LAW

Federal Rule of Criminal Procedure 17(c) authorizes the issuance of subpoenas to obtain "any books, papers, documents, data, or other objects the subpoena designates."  The decision whether to issue a subpoena under Rule 17(c) rests within the sound discretion of the trial court. *United States v. Nixon,* 418 U.S. 683, 702 (1974).  In *Nixon,* the Supreme Court set forth the

threshold requirements for seeking production of evidence under Rule 17(c). The party requesting the documents must establish: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' " 418 U.S. at 699–700.  A "bare bones" motion that contains only "conclusory allegations, devoid of support" fails to meet the *Nixon* standards and precludes issuance of the requested subpoena.  *United States v. Jencks,* 517 F.Supp. 305, 307 (S.D. Oh. 1981).

While typically employed in a pre-trial request, numerous courts have found that Rule 17 subpoenas can be used for post-trial motions and sentencing.  *See U.S. v. Winner,* 641 F.2d 825, 833 (10th Cir. 1981) ("Although Rule 17 subpoenas are generally employed in advance of trial, we see no reason why their use should not be available for post-trial motions and sentencing."); *U.S. v. Boender,* 2010 WL 1912425, *1 (N.D.Ill. 2010) ("Although the structure of the federal rules as well as Rule 17's plain language suggest that the rule was meant to apply only before trial, courts have held that Rule 17 affords parties the ability to subpoena evidence for post-trial matters."); *see also U.S. v. Reaves,* 194 F.3d 1315, 1999 WL 824833 (6th Cir. 1999) (unpublished) (applying Rule 17 in the context of a sentencing hearing); 2 Wright & Miller, *Federal Practice & Procedure* § 272 (4th ed. 2011) (Rule 17 is not limited to subpoenas for the trial. A Rule 17 subpoena may be issued for a preliminary examination, a grand jury investigation, a deposition, for a pre-trial motion, and for a post-trial motion.).  However, to the government's knowledge and review of pertinent law, no court of competent jurisdiction has

held that the *Nixon* standards are somehow lessened in a post-trial context for issuance of a Rule 17 subpoena.

## ANALYSIS

Defendant Al-Madani stands convicted by jury trial of 18 felony offenses, including as pertinent to this motion, a Hobbs Act Conspiracy to Commit Extortion by Color of Official Right.  (R. 1: Indictment, PageID 1, Count 2).  Because this offense, as noted by the Court in its charge to the jury, encompassed a finding that Al-Madani agreed to commit this offense by offering goods and things of value to co-defendant Hills *in return for* favorable official acts, the Court must now determine by a preponderance of the evidence what those acts may have entailed.

### Al-Madani's Requests are Irrelevant, Overly Broad and Cumulative

Because the law is not concerned with whether Hills' promised official acts were wise, or whether Hills would have made those decisions anyway, it does not matter whether Defendant Al-Madani was somehow entitled to Hills' favorable acts despite paying him bribes.  Equally irrelevant is what the hospital may have decided to do with other dentists who did not corrupt the hospital's administration, *after Hills left the hospital*.  It is further axiomatic that what the hospital may have done with full knowledge and disclosure of the pertinent information (i.e., that Hills received a steady stream of benefits from Al-Madani Alqsous and ElRawy going back to 2008) is irrelevant in this determination because it conflates corrupt conduct with (potential) reliance.  Moreover, Defendant Al-Madani continues to claim that he did not pay any bribes to Hills until 2012.  This claim is misleading and ignores the evidence at trial.  Specifically, co-defendant Alqsous and Dr. Hussein ElRawy both confirmed his provision of things of value to

4

Hills dating back to 2008, as discussed in the government's previous filings.  While these facts are not convenient to Defendant, this Court should not ignore them like he does.

First, how the hospital treated other non-corrupt dentists, *after* Edward Hills was forced out of his position of power and influence, is wholly irrelevant to sentencing.  Defendant makes no showing to the contrary but instead simply presumes that this information is somehow relevant to the discussion.  Defendant's arguments that others at the dental department were also engaged in secondary employment and working part-time, ***after Hills left***, simply amount to an imperfect "everyone else did it" defense.  Courts have long held that evidence that a practice is customary or widespread, or even a universal industry practice, does not excuse criminal conduct.  *See Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc*., 135 F.3d 266, 274 (3d Cir. 1998) (en banc) ("Even a universal industry practice may still be fraudulent."); *United States v. Riley*, 550 F.2d 233, 236 (5th Cir. 1977) ("general practice is not an absolute defense to criminality. . ."); *United States v. Brookshire*, 514 F.2d 786, 788-89 (10th Cir. 1975) ("[C]ustom and usage involving criminality do not defeat a prosecution for violation of a federal criminal statute."); *Burnett v. United States*, 222 F.2d 426, 427 (6th Cir. 1955) (per curiam) ("No custom is a justifiable defense for violation of the criminal code of the United States."); *Smith v. United States*, 188 F.2d 969, 970 (9th Cir. 1951) ("Custom, involving criminality, cannot justify a criminal act."); *United States v. Mahaffy*, Case No. 05–CR–613, 2007 WL 1213738, at *3 n.5 (E.D.N.Y. Apr. 24, 2007) (noting that evidence in a criminal trial relating to industry practice "is entirely irrelevant and improper" because "[i]ndustry practice is not a defense to fraud"); *United States v. Berg*, 710 F. Supp. 438, 445 (E.D.N.Y. 1989) (limiting testimony concerning the "custom of other arms dealers in complying with arms export laws" on the ground that such evidence was irrelevant to the state of mind of the defendants), aff'd in part, rev'd in part on

other grounds sub nom. *United States v. Schwartz*, 924 F.2d 410 (2d Cir. 1991); *United States v. Slapo*, 285 F. Supp. 513, 513-14 (S.D.N.Y. 1968 ) ("[W]e have not yet reached the point, at least in this court's view, where an industry custom and practice serves to repeal criminal laws."); *United States v. Troutman*, 814 F.2d 1428 (10th Cir. 1987) (rejecting that payoffs were just how "business was done" could serve as a defense); *United States v. O'Grady*, 742 F.2d 682, 700 (2d Cir. 1984) (Mansfield, J., dissenting) ("That such corruption may be widespread . . . is no more an excuse barring prosecution under the Hobbs Act than . . . the 'custom' followed for many years by American companies of giving money to officials of foreign governments with whom they did business"); *United States v. Walsh*, 700 F.2d 846, 854 (2d Cir. 1983) (holding attempts to secure fair treatment were still bribes, and illegal under the Hobbs Act); *United States v. Fawell*, Case No. 02CR310, 2003 WL 21544239, *8 (N.D. Ill. July 9, 2003) ("Whether the practice was common or uncommon, it was improper and the charged activities were unlawful . . . the argument and evidence that 'everybody does it'. . . [is] no more relevant here than it would be in a drug distribution prosecution.").

Indeed, numerous Circuits have held that evidence and argument based on industry custom or common practice amounts to nothing more than an "everybody does it" defense which is irrelevant and inadmissible.  For example, in *United States v. Oldbear*, 568 F.3d 814 (10th Cir. 2009), the defendant, who had been indicted for embezzling federal tribal funds, sought to call several witnesses who "would have testified that they, like Oldbear, were allowed to use tribal funds to pay for personal transportation expenses." *Id*. at 821.  The district court characterized the proffered testimony as attempting to establish an "everybody-is-doing-it" defense and precluded the testimony as irrelevant. *Id*.  The Tenth Circuit affirmed, holding that "only Oldbear's actions and state of mind were material to her guilt." *Id*. *See also United States v. Pitt-*

*Des Moines, Inc*., 168 F.3d 976, 991 (7th Cir. 1999) (concluding district court correctly excluded evidence of industry custom and practice "based on a fear that the jury might find [the defendant] not guilty because 'everyone does it'"); *United States v. Fowler*, 932 F.2d 306, 315–16 (4th Cir. 1991) (affirming district court's exclusion of testimony supporting the "everybody-does-it defense" as irrelevant (internal quotation marks omitted)); cf. *United States v. Warner*, 396 F. Supp. 2d 924, 937-38 (N.D. Ill. 2005) (deferring judgment on the issue until trial to determine relevance but noting that "any attempt to establish [the defendants'] innocence based on the fact that other administrations acted in the same manner would be improper—arguably akin to a driver pulled over for speeding who, unaware of the lawful limit, concludes that 80 m.p.h. is acceptable because she observed other drivers passing her.").

Moreover this defense is misplaced because the evidence does not show that "everyone else did it."  Indeed, the only people paying bribes and kickbacks to co-defendant Hills were Defendants Al-Madani and Alqsous, and Dr. ElRawy.  Not Dr. Al-Shami, Dr. Kozik, or any of the other dentists covered in Al-Madani's overly-broad subpoena request.  When convicted of this offense, it does not matter that "everyone else did it."  Rather, the question and focus now should be on what did Defendant Al-Madani do.  Any other arguments Al-Madani has thus far proposed simply continue to ignore relevant and controlling law concerning public corruption and Guidelines § 2C1.1.  Because the records and items sought as to other dentists are irrelevant and inadmissible were they to be offered at trial, they cannot be considered relevant at sentencing after Defendant has been convicted of the underlying offense, and Defendant has made no threshold showing of their relevancy or admissibility here.

Second, certain records requested are cumulative to testimony and evidence produced at trial.  Dr. Al-Shami testified as to his full-time position as an attending dentist at trial, including

his full-disclosure to the Hospital before seeking secondary employment.  (R. 402, PageID 12743-46).  A subpoena for additional documents that either seeks to relitigate an irrelevant point or to provide information cumulative to that produced at trial should be denied as a matter of course.  *United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990) ("internal documents are not required to be produced when the witness' testimony at trial provides the information in the documents") (quashing subpoena to pharmacy where pharmacist testified as to pharmacy practice) (citation omitted).  Here, Defendant Al-Madani had an opportunity to cross-examine Dr. Al-Shami about his unique and non-corrupt employment for MetroHealth at the Cuyahoga County Jail.  He is not now entitled to material that is simply cumulative of the same information.

Third, it is wholly speculative to claim the hospital would have made the same or similar decisions regarding Defendant's full-time employment had it been provided with the complete relevant information.  That is, it is highly doubtful that MetroHealth would have reached the same conclusion with Defendants Alqsous and Al-Madani that it did with Dr. Al-Shami or others had it known at the time that Alqsous and Al-Madani were corrupting the COO's office.  Moreover, the documents sought are overly broad and cover a timeframe far outside the relevant time period, and cannot be adequately considered in such a vacuum nor would they appropriately approximate the knowledge of the hospital in 2015 while the federal investigation was still ongoing and not known to the public.

### Al-Madani Has Not Exercised Due Diligence

Finally, Defendant has not exercised due diligence in this request.  Defendant instead waited until the 11th hour to file this motion.  The government's theory in this matter is not a secret.  Rather, it was alleged in paragraph 176 of the Indictment, made available to Defendant

upon his arraignment on October 25, 2016.  It was proven *ad nauseum* through trial.   It was presented in the first and final pre-sentence reports.  It was further presented in the government's sentencing memorandum.  Defendant also argued about these issues at the sentencing hearings in February.

Instead of conducting his due diligence in light of this ample notice, Defendant now claims that he attempted to pursue the items sought in the requested subpoena through a public records request.  However, he only submitted that request on January 21, 2019.  He also did not actually ask for all of the items he now requests in his motion.  Attached hereto as Exhibit A is a copy of the public records request Defendant actually submitted and the response he received from the hospital.  The only items that overlap between the public records request and the instant motion are for the contracts for MetroHealth attending dentists from 2010 through 2018, to include those for Dr. Al-Shami.  Putting aside the utter irrelevance and cumulative nature of Dr. Al-Shami's contract, the government notes that most of these materials, including all contracts covering the relevant timeframe were provided to the defendants as part of the government's discovery in this matter.  The remainder of his requests are wholly outside the relevant timeframe for Count 2.

Assuming these materials are actually relevant, evidentiary and important to these proceedings, Defendant utterly failed to exercise his due diligence in attempting to obtain them in a timely manner.  He should not now be rewarded by having this Court subvert Rule 17 into a belated tool for discovery.  *See United States v. Wheeler*, 2007 WL 9709920, *2 (E.D. Ky. Jun. 5, 2007) (court denying motion for post-trial Rule 17 subpoena to bank for checks underlying FBI forensic report where defendant had ample notice and did not timely seek such information).  Defendant's arguments are not new.  There is no reason, other than a post-conviction change in

strategy, for the defendant's failure to identify the requested documents before trial or sentencing proceedings in this matter.

### Al-Madani's Request Seeks to Litigate a Waived Rule 29 Argument

Finally, Defendant Al-Madani filed a specific Rule 29 motion challenging his conviction on Counts 6-8 of the indictment, not Count 2.  (R. 351, Al-Madani R. 29 Mtn., PageID 6242). He waived a right to challenge his remaining convictions under Rule 29 on any other grounds. *United States v. Dandy*, 998 F.2d 1344, 1357 (6th Cir. 1993).  Accordingly, he cannot exist in a world where he is convicted of Hobbs Act Conspiracy to Commit Extortion by Color of Official Right by providing things of value to Edward Hills without having an expectation of a benefit in return.  He is explicitly guilty of conspiring to provide Ed Hills things of value ***in return for*** favorable official acts.  Nonetheless Defendant Al-Madani insists that such a place exists and he is its sole occupant.  Instead of entertaining this fantastical argument, the Court should recognize that his subpoena and requests are simply attempts to work around claims he has already waived and cannot now challenge.

**CONCLUSION**

Because Al-Madani: (1) failed to exercise due diligence in obtaining his desired materials despite being aware of the government's theory of the case at arraignment, his receipt of his Pre-Sentence Reports, the government's filings, and his own participation in the trial and the sentencing hearings; (2) makes a bare-bones and conclusory attempt to obtain items in his proposed subpoena that are overly-broad and irrelevant due to invalid legal theories and because they seek documents outside the relevant timeframe; and (3) seeks to litigate his waived Rule 29 arguments concerning Count 2, this Court should deny his untimely, overly-broad, irrelevant and conclusory motion for a subpoena in this matter.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:   /s/ Om Kakani
        Om Kakani (NY: 4337705)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3756
        (216) 685-2378 (facsimile)
        Om.Kakani@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of March 2019 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ Om Kakani
Om Kakani
Assistant U.S. Attorney