# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16-cr-329-3 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| YAZAN AL-MADANI, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of defendant Yazan Al-Madani ("Al-Madani") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 694 (§ 2255 Motion); *see* Doc. No. 706 (Memorandum in Support).) Plaintiff United States of America (the "government") has filed a response in opposition to the motion. (Doc. No. 716 (Opposition).) After reviewing the parties' briefing, the Court set the matter for an evidentiary hearing on the first ground for relief raised in the motion and appointed counsel for Al-Madani. (CJA 20 Appointment of Attorney J. Reid Yoder, 9/3/2024; Order [non-document], 9/5/2024.) Appointed counsel subsequently filed a reply in support of the § 2255 Motion. (Doc. No. 744 (Reply).)

At the December 12, 2024 hearing, Al-Madani voluntarily withdrew on the record the first ground for relief from consideration.[1] Thereafter, the Court concluded the hearing and took the §

---

[1] In Ground One, Al-Madani alleged that he received constitutionally deficient advice from trial counsel regarding a plea offer that the government extended on the eve of trial. (Doc. No. 694, at 4; Doc. No. 706, at 18–19.) In anticipation of the hearing, Al-Madani subpoenaed former counsel, now-Administrative Law Judge Richard Drucker, to appear and provide testimony. The Court also granted the government's motion to allow lead counsel for the government, AUSA Om Kakani, to serve as both advocate and witness at the hearing. (Doc. No. 752 (Opinion and Order).) At

2255 Motion under advisement.

## I.     BACKGROUND

The facts of the RICO conspiracy at issue in this case have been set forth in detail in numerous opinions by this Court and the Sixth Circuit. *See, e.g.*, *United States v. Hills*, No. 1:16-cr-329, 2023 WL 1108042 (N.D. Ohio Jan. 30, 2023); *United States v. Hills*, 27 F.4th 1155 (6th Cir. 2022). Familiarity with these prior decisions is assumed. The Court will only set forth enough facts to frame the issues raised in Al-Madani's motion.

On July 27, 2018, after a five-week trial, a jury returned multiple guilty verdicts against Al-Madani and his co-defendants relating to a criminal conspiracy involving their employment as dentists at MetroHealth Hospital ("MetroHealth"), a public hospital receiving federal and state funding. (Doc. No. 339 (Al-Madani Verdicts); *see* Doc. No. 337 (Edward Hills Verdicts); Doc. No. 338 (Sari Alqsous Verdicts); Doc. No. 340 (Tariq Sayegh Verdicts).) The crimes for which Al-Madani was found guilty included: RICO conspiracy; conspiracy to commit extortion under color of right (Hobbs Act conspiracy); conspiracy to commit bribery concerning programs receiving federal funds; conspiracy to commit honest services mail and/or wire fraud; bribery concerning programs receiving federal funds; conspiracy to commit money and property mail and/or wire fraud; conspiracy to solicit, receive, offer and pay health care kickbacks; offering or

---

defense counsel's request, the Court conducted a telephonic conference with counsel before the hearing, during which counsel advised that his client wished to withdraw Ground One. By agreement of counsel, the Court ruled that the evidentiary hearing would go forward as scheduled, and if Al-Madani wished to withdraw any portion of his grounds for relief, he could do so at the hearing. (*See* Minutes of Proceedings [non-document], 12/09/2024.) At the hearing on December 12, 2024, Al-Madani confirmed that, following his counsel's interviews with the witnesses expected to testify at the hearing, and after discussing the matter with counsel, he wished to withdraw Ground One. He also indicated that he and his counsel agreed that the remaining two grounds for relief could be addressed without an evidentiary hearing. AUSA Kakani also proffered that he would have testified at the hearing that he neither extended, nor sought authorization to extend, a last-minute plea offer to Al-Madani. After determining that Al-Madani's request was made voluntarily and with the advice of counsel, the Court granted Al-Madani's oral motion to withdraw Ground One. (Minutes of Proceedings [non-document], 12/12/2024.)

paying kickbacks in connection with a federal health care program; conspiracy to obstruct justice and tamper with witnesses; and making false statements to a United States department or agency. (Doc. No. 339.)

At all times relevant to the indictment, defendant Edward Hills ("Hills") served in positions of authority for MetroHealth, first as Chair of the Dental Department and eventually as Chief Operating Officer. Al-Madani, defendant Sari Alqsous ("Alqsous"), and defendant Tariq Sayegh ("Sayegh") were foreign-trained dentists who worked in the Dental Department under Hills. At trial, the government presented testimony from more than 50 witnesses, as well as evidence that included wire transfers, financial and employment records, emails, text messages, and wiretaps demonstrating that Al-Madani and his co-defendants engaged in a pattern of corrupt and fraudulent activity through a number of schemes.

Of the six schemes forming the core of the government's case, the "stream of benefits" scheme features most prominently in Al-Madani's motion to vacate. Under this scheme, Hills solicited and received from Al-Madani, Alqsous, and a third foreign-trained dentist, Hussein Elrawy ("Elrawy"), cash and other things of value in exchange for unearned employment-related benefits. In finding that sufficient evidence was offered at trial to support the "stream of benefits" scheme, the Sixth Circuit observed:

> **Bribery.** Ample evidence from multiple witnesses, corroborated by documents and text messages, established that Hills solicited and received from Alqsous, Al-Madani, and Elrawy tens of thousands of dollars in cash, many five-star dinners, use of an apartment and purchase of a computer for his girlfriend, airline tickets, hotel stays, prescription drugs, car repairs, an expensive television, and a $3,600 Louis Vuitton briefcase. Defendants argued that those things were simply gifts, but the jury had more than an adequate basis to reject that claim.
>
> Indeed, unindicted coconspirator Dr. Hussein Elrawy specifically testified that he, Alqsous, and Al-Madani provided the things of value to Hills in return for promises

of favorable employment-related actions. Elrawy explained that Hills took or promised to take favorable action, including: (1) making adjustments to the department's incentive bonuses, which Hills tracked on spreadsheets and discussed over expensive dinners; (2) assigning them high value procedures such as the first in a series of visits by a denture patient (DI); (3) adopting and maintaining a "flex" scheduling policy under which they received full time pay for fewer than five days of work per week that allowed them to work at their outside clinics; and (4) creating an additional dental resident position for Lufti Nassar—Alqsous's preferred candidate—when it appeared that Nassar would not be selected for the residency program.

See United States v. Hills, 27 F.4th 1155, 1175–76 (6th Cir. 2022) (footnote omitted).[2]

After the Court received the jury's verdicts and ordered the preparation of Presentence Investigation Reports, Al-Madani and his co-defendants renewed their motions for judgment of acquittal, which the Court denied in a memorandum opinion issued on December 21, 2018. (Doc. No. 421 (Memorandum Opinion).) Following a multi-day hearing with all defendants on shared issues relating to sentencing (see Minutes of Proceedings [non-document], 2/11/2019; Minutes of Proceedings [non-document], 2/12/2019), the Court sentenced Al-Madani to a custody term of 121 months. The Court also ordered Al-Madani to pay restitution in the amount of $897,934.48 and a special assessment in the amount of $1,800.00. (Doc. No. 519 (Al-Madani Judgment), at 2,[3] 6; Minutes of Proceedings [non-document], 5/24/2019.)

Al-Madani took a direct appeal from the Court's judgment. (Doc. No. 525 (Notice of

---

[2] The jury also heard considerable testimony regarding the "dental resident bribery" scheme, by which Al-Madani, Alqsous, and Sayegh solicited and/or accepted bribes from other foreign-trained dentists seeking admission to MetroHealth's dental residency program. Id. at 1169. As the jury was informed at trial, foreign-trained dentists are required to complete a residency program in order to be licensed to practice dentistry in the United States. MetroHealth's residency program is unique and especially coveted because it is tuition-free and provides residents a salary, whereas most residency programs require residents to pay tuition and do not compensate the residents for their time. Al-Madani, Alqsous, and Sayegh exploited their connections with foreign-trained dentists and their relationship with Hills in order to obtain admission for dentists who paid them bribes.

[3] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

Appeal).) The Sixth Circuit consolidated Al-Madani's direct appeal with the appeals taken by his co-defendants, and on March 3, 2022, the Sixth Circuit entered a decision denying the appeals and affirming this Court's judgments. (Doc. No. 627 (Opinion); *see* Doc. No. 580 (Consolidation Order).) Al-Madani and his co-defendants also filed post-judgment motions for a new trial. Al-Madani's motion was based on a claim that he had uncovered "new" evidence, including: (1) a Facebook screenshot between co-defendant Sayegh and a resident applicant targeted in the dental residency bribery scheme; (2) a summary of a purported post-trial conversation between Al-Madani and Sayegh, wherein Sayegh allegedly conceded his substantial role in the dental residency scheme; and (3) an unsigned employment contract between MetroHealth and Dr. Loiy Al-Shami ("Dr. Al-Shami"). (Doc. No. 618 (Al-Madani Motion for New Trial).) The Court denied the motion, and, with respect to the unsigned employment contract offered by Al-Madani to show that other MetroHealth dentists were permitted to work a flexible schedule, the Court ruled, in part, that whether other dentists were permitted to work a flexible schedule was irrelevant to the question of whether Al-Madani bribed Hills for the privilege of doing so. (Doc. No. 666 (Memorandum Opinion), at 19 (quotation marks and citation omitted).)

On January 10, 2024, Al-Madani filed the present motion to vacate. At the parties' request, the Court permitted numerous extensions of the briefing schedule. (Order [non-document], 1/12/2024; Order [non-document], 3/1/2024; Order [non-document], 4/22/2024; Order [non-document], 6/12/2024; Order [non-document], 7/19/2024; Order [non-document], 9/25/2024; *see* Doc. Nos. 709, 718, 727, 735, 742.) With briefing finally complete, the Court now issues its decision.

## II.     STANDARD OF REVIEW

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)).

The movant bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam). Vague and conclusory claims that are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *see Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required "'to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The burden borne by a § 2255 petitioner to obtain a hearing is not onerous. *See Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citing *Turner,* 183 F.3d at 477). However, a petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle him to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008); *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (holding that an evidentiary hearing was "unnecessary" where there was "nothing in the record to indicate that [the petitioner] would be able to prove his allegations" at a hearing); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255.") (citing, among authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962); *cf. Valentine*, 488 F.3d at 334 (finding that the burden is met where the petitioner "offers more than a mere assertion . . . he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible.'").

Moreover, a hearing is not necessary when a petitioner's claims "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'" *Id.* (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where, as here, the judge considering the § 2255 motion also presided over the trial, the judge may rely on her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 n. 4, 97 S. Ct. 1621, 52 L. Ed. 2d 136

(1977)). Because Al-Madani withdrew Ground One and conceded that the remaining grounds could be decided without an evidentiary hearing, the Court finds that it may decide the motion on the briefing. (*See* Minutes of Proceedings [non-document], 12/12/2024.)

## III.    DISCUSSION

Two grounds for relief remain for the Court's consideration. In Ground Two, Al-Madani argues that trial counsel failed to adequately investigate and develop a meaningful defense to the charges relating to the "stream of benefits" scheme, especially as it involved conspirators receiving the work-related benefit of a flexible schedule. (Doc. No. 694, at 5.) Al-Madani claims, in Ground Three, that he was deprived of his right to due process when the government failed to timely disclose grand jury testimony and refused to produce certain employment records from MetroHealth. (*Id*. at 7.)

### A.  Ineffective Assistance of Counsel Standard

The constitutional anchor for Ground Two is the Sixth Amendment's right to effective assistance of counsel. "To prevail on an ineffective-assistance-of-counsel claim, [a petitioner] must satisfy the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020). Specifically, the petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687–88; *see also Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The Court may address the *Strickland* prongs in any order and need not address both prongs if the petitioner "makes an insufficient showing on one." *See Wingate*, 969 F.3d at 955 (quotation marks and

citation omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id*. Counsel's performance must be evaluated from the perspective existing at the time of the representation, not from the perspective of hindsight. *Id*. Indeed, a prisoner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that counsel's errors were so serious as to deprive him of a fair trial. *Strickland*, 466 U.S. at 687–88; *United States v. Hanley*, 906 F.2d 1116, 1120–21 (6th Cir. 1990); *Flippins v. United States*, 808 F.2d 16, 18 (6th Cir. 1987); *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) ("Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." (citing *Strickland, supra*)).

A criminal defendant has the right to effective assistance of counsel at "all 'critical stages of the criminal proceedings.'" *Missouri v. Frye*, 566 U.S. 134, 140, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009) (further citations omitted)). Included within the definition of a "critical stage" are pretrial investigations. *See Mitchell v. Mason*, 325 F.3d 732, 743 (6th Cir. 2003) (holding that the pre-trial period devoted to investigation and trial preparation is a "critical stage" that entitles a criminal defendant to the effective assistance of counsel (citations omitted)).

**B.  Effectiveness During Pretrial Investigation (Ground Two)**

Counsel has a duty under the Sixth Amendment to conduct reasonable investigations or make a reasonable decision that investigations are unnecessary. *See Sims v. Livesay*, 970 F.2d 1575, 1580–81 (6th Cir. 1992) (citing *Strickland*, 466 U.S. at 691). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; [but] strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91; *see also Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001) ("While the temptation to rely on hindsight is particularly strong in the context of ineffective assistance claims based on counsel's failure to investigate, the court must conclude that counsel's strategic choices made after less than complete investigation are not constitutionally deficient if reasonable professional judgment supports the limitations on investigation." (citing *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998))).

In his second ground for relief, Al-Madani claims that his trial counsel "fail[ed] to conduct a meaningful investigation into the United States's representations related to the [] fraudulent nature of the purported 'flex-time scheduling policy' implemented by Hills." (Doc. No. 706, at 20–21.) He also posits that his trial attorneys fell short of providing effective assistance because they failed to acquire employment contracts from certain MetroHealth employees, despite the fact that he told his counsel—both before and during trial—that he "was aware of numerous dentists and physicians employed by MetroHealth who worked at least 40 hours per week over 4 days and were classified as full-time employees[.]" (Doc. No. 706-1 (Declaration of Yazan Al-Madani) ¶ 26.) He claims that he asked his attorneys "to obtain copies of employment contracts and

10

documents from MetroHealth that would serve to establish that full time employment was defined by hours worked and not days[,]" but counsel failed to acquire them. (*Id.* ¶ 27; *see also* Doc. No. 706, at 21.)

As an initial matter, the Court finds defense counsel conducted a constitutionally adequate investigation. "There is no bright-line rule for determining whether a given investigation was adequate." *Smith v. United States*, 617 F. Supp. 3d 828, 837 (M.D. Tenn. 2022) (citing *Strickland*, 466 U.S. at 688–89). "However, finding that an attorney interviewed his client, interviewed other witnesses, reviewed discovery, and pursued evidence to support a defense theory generally will support a finding that an attorney adequately investigated his client's case." *Id.* (citing *Jackson v. Warden*, 622 F. App'x 457, 461 (6th Cir. 2015)).

Discovery in this case was voluminous. The government's pretrial Fed. R. Crim. P. 16 disclosures in this complex fraud case were substantial, with each defendant receiving a four-terabyte hard drive containing discoverable material. (Doc. No. 243 (Ruling on Discovery Motions), at 2.) Al-Madani does not suggest that his counsel failed to review the produced materials or interview witnesses, and, in fact, the Court granted several defense motions to continue the trial dates to allow sufficient time for pretrial investigation and review. (*See, e.g.*, Doc. Nos. 68, 163 (Orders to Continue).)  Additionally, Al-Madani's counsel filed several motions for the issuance of Fed. R. Crim. P. 17(c) subpoenas for records and documents from MetroHealth and the Ohio Department of Jobs and Family Services (Medicaid Program). (*See, e.g.*, Doc. Nos. 114, 118.) At the Court's direction, the government and Al-Madani agreed to a Stipulated Order permitting the issuance of the subpoenas to MetroHealth and Ohio Jobs and Family Services. (Doc. No. 185 (Stipulated Order).) If anything, the record shows that counsel's pretrial review of and

11

pursuit of discovery was thorough.

Moreover, the Court disagrees with Al-Madani that the employment contracts of other MetroHealth employees would have established that MetroHealth defined full-time employment as working 40 hours per week despite the number of days present at the hospital. (Doc. No. 706, at 21.) Indeed, this position was directly refuted by Dr. Alfred Connors, MetroHealth's Chief Medical Officer. Dr. Connors testified that "physicians [including dentists] are . . . salaried employees. Not hourly employ[ee]s." (Doc. No. 403 (Trial Transcript), at 303–10; *see also* Doc. No. 404 (Trial Transcript), at 34–36 (Dr. Connors explaining that a dentist could not work at an outside clinic without permission from MetroHealth and a full vetting).) "[T]hey don't work a 40-hour week. And we expect them—the average physician actually works 55 to 60 hours a week." (Doc. No. 403, at 303.) He stated that "we expect [physicians] to be there *five days a week* if they're full time." (*Id*. at 304–05 (emphasis added).) "So we don't let people say I worked a certain number of hours and once you reach 40 you can stop." (*Id*. at 303–04.)

Dr. Connors explained that, if a physician wanted to work fewer than five days per week, they could not "just jump onto a flextime program," and that any such arrangement "would have to be approved by their chair and ultimately signed off by me." (*Id*. at 305–06.) For example, the jury heard testimony from Dr. Al-Shami, who worked four days per week as a full-time MetroHealth dentist. (Doc. No. 402 (Trial Transcript), at 41–98.)  Dr. Al-Shami testified that his employment at MetroHealth included seeing patients at the Cuyahoga County Jail. Because his work at the county jail did not generate as much income as dentists working at the hospital—resulting in a lower bonus from MetroHealth—Dr. Al-Shami sought and received permission to work one day a week at his private clinic to supplement his income. (*Id*. at 85–86.) Defense counsel

fully explored Dr. Al-Shami's employment arrangement on cross-examination.

> Counsel: Okay. So you're not working Monday through Friday at Metro[Health] Hospital?
>
> Dr. Al-Shami: I work Monday, Tuesday, Thursday and Friday.
>
> Counsel: Okay. And are you working Saturday at Angel [Dental Care] exclusively?
>
> Dr. Al-Shami: Yes.
>
> Counsel: Okay. So you're working four days a week at Metro[Health] Hospital?
>
> Dr. Al-Shami: That's correct.
>
> Counsel: And those four days, does that add up to 40 hours?
>
> Dr. Al-Shami: Yes.

(*Id*. at 84.) It is clear that counsel was aware that other employees, in factually-dissimilar circumstances, were permitted to work flexible schedules with Dr. Connors's permission.

But Al-Madani ignores the fact that he was not convicted of working a flexible schedule. Rather, the "stream of benefits" scheme was unlawful because a flexible schedule was one of the many unearned employment-related benefits Al-Madani and his co-conspirators received from Hills in exchange for with things of value. Dr. Connors was clear that he never approved Hills's flex-time policy that allowed dentists of his choosing (i.e., those who had paid him a bribe) to work fewer than five days a week simply so that they could work in their private clinics. (Doc. No. 403, at 303–08, Doc. No. 404, at 35–36.) As the Court observed when it denied Al-Madani's post-trial motion for a Rule 17(c) subpoena to MetroHealth seeking employment contracts of Dr. Al-Shami and others working flexible schedules, "[w]hether MetroHealth permitted other dentists and physicians to work a flexible schedule is irrelevant to the question of Al-Madani's culpability for

13

using flex-time to corruptly profit at the expense of the hospital." (Doc. No. 501 (Opinion and Order), at 4.) *See, e.g.*, *United States v. Terry*, No. 1:10-cr-390, 2011 WL 2149361, at *1, 7 (N.D. Ohio May 31, 2011) (granting the government's motion to exclude as irrelevant evidence that others had engaged in similar conduct because the fact that others had received assistance from the public official without paying a bribe does not make it any more or less likely that defendant accepted bribes from others for the same assistance).[4] *See Goff v. Bagley*, 601 F.3d 445, 468 (6th Cir. 2010) (counsel was not ineffective for failing to raise a patently frivolous argument (citation omitted)); *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004) (noting that, even if the rejected claim is non-frivolous, the required showing of prejudice cannot be made if the claim lacks merit (citation omitted)); *see also United States v. Ealy*, No. 1:05-cr-58, 2007 WL 2904028, at *1 n.2 (W.D. Mich. Oct. 1, 2007) ("It is obvious . . . that an attorney has an ethical duty not to raise frivolous arguments . . . and the failure to raise a frivolous argument cannot violate the *Strickland* standards nor cause prejudice warranting relief." (internal citation omitted)).[5]

In a similar vein, counsel cannot be considered ineffective for failing to advance a defense theory that the conduct was acceptable because other physicians and dentists might have been engaged in the same illegal conduct (i.e., receiving a flexible schedule in exchange for things of

---

[4] The MetroHealth employment contracts Al-Madani attaches to his memorandum in support highlight the fact that other dentists' contracts had no relevance to the crimes in which Al-Madani was charged. For example, Dr. Al-Shami's contract (Doc. No. 706-5, at 11–15), as already explained, would not have advanced Al-Madani's defense because Dr. Al-Shami received permission to work a flexible schedule to accommodate his work at a local jail. (Doc. No. 402, at 85–86.) Another dentist, Victoria Barany (*see* Doc. No. 706-6), was actually a part-time employee, so her flexible schedule would have had no bearing on what schedule Al-Madani would have been expected to work as a full-time employee. (*Id.* at 8.) Additionally, Dr. Minal Desai's employment contract was signed by Dr. Connors, which, unlike Al-Madani's arrangement, means it went through the proper approval and vetting process. (*Id.* at 15–18.)

[5] For many of the same reasons, to the extent Al-Madani suggests that counsel was ineffective for failing to interview MetroHealth employees, such as Dr. Al-Shami, who were lawfully permitted to work a flexible schedule, "[a] defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (citation omitted).

14

value). Again, as the Court noted when it denied Al-Madani's post-trial discovery motion seeking the employment contracts of Dr. Al-Shami and other MetroHealth employees working flexible schedules, "[i]t is well settled that the fact that a practice is widespread or customary is simply not a defense to criminal conduct." (Doc. No. 501, at 4 (collecting cases, including *Brunett v. United States*, 222 F.3d 426, 427 (6th Cir. 1955) ("No custom is a justifiable defense for violation of the criminal code of the United States." (per curiam))).). The Court properly instructed the jury that whether any other individual should be charged or held responsible for the crimes at issue in the case is not a proper consideration for them. *See Sixth Circuit Pattern Jury Instr.* § 8.08.[6] Al-Madani's counsel would not have been permitted to argue otherwise and cannot be considered ineffective for failing to attempt to do so. *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (finding that counsel was not constitutionally ineffective for not pursuing meritless claims); *see Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (A failure to raise a claim will not amount to ineffectiveness as long as counsel "exercise[d] reasonable professional judgment." (quotation marks and citation omitted)); *see also Krist v. Foltz*, 804 F.2d 944, 946 (6th Cir. 1986) (noting that "[a]n attorney is not required to present a baseless defense or create one that does not exist" (citation omitted)).

For the reasons discussed above, the Court finds that Al-Madani's claims related to his counsel's pretrial investigation are without merit, and therefore Ground Two is denied.

---

[6] Section 8.08 provides, in part, "[a]lso remember that whether anyone else should be prosecuted and convicted for this crime is not a proper matter for you to consider. The possible guilt of others is no defense to a criminal charge. Your job is to decide if the government has proved this defendant guilty. Do not let the possible guilt of others influence your decision in any way." The Court included the § 8.08 language in its jury instructions. (Doc. No. 414 (Trial Transcript), at 54.)

### C. *Brady* Violations (Ground Three)

In Ground Three, Al-Madani argues that the government violated his Fifth Amendment right to due process when it failed to timely disclose grand jury testimony and failed entirely to produce employment contracts of certain MetroHealth employees demonstrating that they worked a flexible schedule. (Doc. No. 694, at 7.) The government argues that this final ground for relief is procedurally barred, and, in any event, fails on the merits. (Doc. No. 716, at 26–29.)

#### 1. *Procedural Default*

A criminal defendant may not utilize a § 2255 motion as a substitute for a direct appeal. *Regaldo v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citation omitted); *Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998) ("An application under § 2255 . . . should not be considered a substitute for a direct appeal." (citation omitted)); *see Brecht v. Abrahamson*, 507 U.S. 619, 637–38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). "[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003) (citing, among authority, *Bousley v. United States*, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)). A prisoner can also overcome a procedural default if he demonstrates that he is "actually innocent." *Regaldo*, 334 F.3d at 528 (citations omitted). The hurdle a petitioner faces to overcome a procedural default is "intentionally high[,] . . . for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (citing *United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1998)).

Al-Madani fails to even address the government's procedural default argument in his reply,

or otherwise demonstrate the existence of cause and prejudice or actual innocence sufficient to overcome the default. Moreover, Al-Madani admits that he had pretrial discussions with his trial counsel about getting copies of various MetroHealth employment contracts (*see* Doc. No. 706-1 ¶¶ 26–27 ("I told [Attorneys] Drucker and [Subodh] Chandra numerous times, both before and during trial in my Criminal Case, that I was aware of numerous dentists and physicians employed by MetroHealth who worked at least 40 hours per week over 4 days and were classified as full-time employees")),[7] and he does not deny that he ultimately received the grand jury evidence at trial, though he complains that its production was untimely. (*See* Doc. No. 706, at 24–25.) Al-Madani was aware at trial (and certainly before he filed his direct appeal) of the evidence he now claims was undisclosed or untimely disclosed *Brady* materials. There appears, therefore, no cause in the record for why this claim was not raised on direct appeal. *See also Ambrose v. Booker*, 684 F.3d 638, 645 (6th Cir. 2012) (the "cause" inquiry typically turns on whether an external factor impeded counsel's ability to comply with procedural rules (quotation marks and citation omitted)); *see, e.g.*, *Sullivan v. United States*, 587 F. App'x 935, 944 (6th Cir. 2014) ("Sullivan has procedurally defaulted on any *Brady* claim concerning these documents because his appellate counsel, who had these documents, did not raise them on direct appeal."). The Court finds Ground Three is procedurally defaulted.

### 2.  *Merits*

Even if the Court were required to reach the merits of the third ground for relief, it would fail. "[T]he suppression by the prosecution of evidence favorable to an accused upon request

---

[7] In any event, following Dr. Al-Shami's testimony at trial, Al-Madani was certainly aware that there were MetroHealth employees who had worked a flexible schedule.

17

violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). A *Brady* claimant must prove that (1) evidence was favorable to him, because it was either exculpatory or impeaching, (2) the government suppressed the evidence, either willfully or inadvertently, and (3) he was prejudiced by the nondisclosure, i.e., the undisclosed evidence was material to either guilt or punishment. *Stickler v. Greene*, 527 U.S. 263, 281–82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999).

Al-Madani does not specifically identify the grand jury testimony the government allegedly produced in an untimely fashion, or explain how the delayed production impacted his ability to present a meaningful defense. Elsewhere in his supporting memorandum, he references a post-trial correspondence from Attorney Chandra wherein counsel notes that the government delayed in producing grand jury testimony "from alleged victims stating that [Al-Madani] did not in fact solicit them for bribes . . . *until the eve of those witnesses' testimony*." (Doc. No. 706, at 22 (citing Doc. No. 706-4 (Correspondence, dated 6/19/2019), at 3 (emphasis added)).)

Under Rule 26.2, which incorporates the Jencks Act in the Federal Rules of Criminal Procedure, after a witness has testified on direct examination, the government or the defendant may discover the witness's pretrial statements if the statements are in the possession of the party calling the witness and relate to the subject matter of the witness's testimony. *See also* 18 U.S.C. § 3500. While it is true that early disclosure of Jencks material "avoids the inevitable delay of the trial when the material is withheld until the witness concludes his direct examination[,]" *United States v. Minksy*, 963 F.2d 870, 876 (6th Cir. 1992), the government has the right under the Jencks Act to withhold such material until the witness has testified on direct. 18 U.S.C. § 3500(b); *United*

*States v. Brazil*, 395 F. App'x 205, 215 (6th Cir. 2010); *see also United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988) ("The clear and consistent rule of this circuit is that the intent of Congress expressed in the Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial." (citations omitted)). As for *Brady,* the government is only required to provide exculpatory and impeachment evidence in time for effective use at trial. *See United States v. Crayton*, 357 F.3d 560, 569 (6th Cir. 2004) (citation omitted). Further, "[w]hen *Brady* material sought by a defendant is covered by the Jencks Act . . . the terms of that Act govern the timing of the government's disclosure." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (quotation marks and citation omitted).

In its trial order, the Court "strongly encourage[d the parties] to provide Jencks and reciprocal Jencks material no later than the close of proceedings the day before the witness is expected to testify." (Doc. No. 166 (Amended Trial Order), at 7.) Consistent with the trial order— and well within the timing requirements of the Jencks Act—the government provided Jencks material the day before a witness was scheduled to testify, if not earlier. Al-Madani does not suggest that the government ever delayed production of any Jencks Act material in bad faith, or otherwise violated the Jencks Act by failing to provide a witness's prior testimony after his direct examination was concluded. In fact, the email cited by Al-Madani indicates that the government exceeded what the Jencks Act requires by providing the grand jury testimony by "the eve of those witnesses' testimony." (*See* Doc. No. 706-4, at 3.) Al-Madani has failed, therefore, to demonstrate a *Brady* violation relative to the production of grand jury testimony.

As for the MetroHealth employment contracts, Al-Madani alleges in conclusory fashion that "the United States carefully selected the MetroHealth contracts and documents they turned

19

over to the defense or potentially instructed MetroHealth to only provide documents that served to advance their theory." (Doc. No. 706, at 24 (footnote omitted).) He offers absolutely no facts to substantiate his wild speculation that the government colluded with MetroHealth to deprive Al-Madani of these documents. It is well settled that vague or conclusory allegations of constitutional violations, such as the ones advanced by Al-Madani, are insufficient to meet a petitioner's burden of establishing a right to relief under § 2255. *See Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735.

Furthermore, for the reasons explained above, the existence of other employees permitted to work a flexible schedule, or even a widespread custom of employees unlawfully working flexible schedules is simply not relevant to question of whether Al-Madani bribed Hills for a flexible schedule of his own. Because Al-Madani has failed to demonstrate the existence of a *Brady* violation, Ground Three is denied for this additional reason.

## IV.    CONCLUSION

For the foregoing reasons, Al-Madani's motion to vacate, set aside, or correct his sentence (Doc. Nos. 694, 706) is denied. Further, for all of the same reasons, the Court finds that "reasonable jurists" would not debate the Court's denial of Al-Madani's motion to vacate as either procedurally defaulted or without merit. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Accordingly, the Court certifies that an appeal from this decision could not be taken

in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: January 23, 2025

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**